**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>JEREMY HALGAT, *et al.*,<br><br>          Defendants. | 2:13–cr–241–APG–VCF<br><br>**ORDER** |

This matter involves Jeremy Halgat's alleged conspiracy to distribute a controlled substance in violation of 21 § U.S.C. 846(a)(1), (b)(1)(C) and 21 § U.S.C. 841(a)(1) and (b)(1)(C). (Indictment #1[1]). Before the court is Halgat's motion to compel information regarding the Government's confidential informant (#38). The Government opposed (#44); and Halgat replied (#53). Also before the court is Halgat's motion to compel information regarding an undercover agent's cell phone records (#39). The Government opposed (#45); Halgat replied (#54); and on April 8, 2014, the court heard oral argument on Halgat's motions. For the reasons stated below, the motions are granted.

**BACKGROUND**

This matter arises from the Bureau of Alcohol, Tobacco, Firearms and Explosives' undercover sting, Operation Pure Luck. (Def.'s Mot. to Compel (#38) at 3:3, 11). It began in 2011. (*Id.*) The target: Vagos Motorcycle Club. (*Id.* at 3:8). Through Operation Pure Luck, the ATF planned to infiltrate Vagos using a Vagos insider acting as the ATF's confidential informant and an undercover ATF agent, Task Force Officer Agostino Brancato. (*Id.* at 3:18–19). Together, the confidential informant and Brancato

---

[1] Parenthetical citations refer to the court's docket.

1

infiltrated the Vagos circle where a series of criminal acts occurred. Operation Pure Luck lasted two and half years and resulted in the indictment of Udell Wickham and Jeremy Halgat, among others. (*Id*. at 3:11–12).

Operation Pure Luck began with a stroke of luck. The ATF unexpectedly recruited a fully "patched"[2] member of the Vagos Motorcycle Club who agreed to act as a confidential informant and introduce Brancato to the informant's Vagos "brothers." (*Id*. at 3:8–16); (*see also* Doc. #59 at 5:5–9). Defendant Jeremy Halgat was one of the "brothers" at Brancato's initial meeting with the Vagos gang. (*Id*.) Halgat was the Vagos Vegas Valley Vice President and Southern Nevada Regional Sergeant at Arms. (Gov't's Opp'n (#45) at 2:13–14). The confidential informant told Halgat that Brancato could be trusted because both Brancato and the informant came from the same neighborhood. (Doc. #59 at 5:3).

Before meeting Brancato, Halgat had no criminal record and had never been arrested. (Doc. #59 at 5:8–9). In fact, after surveilling Halgat for eight months, the ATF was unable to produce any evidence of any criminal activity. (*Id*. at 5:14). Halgat's lawful behavior continued even while those around him broke the law. For instance, on February 18, 2011, Halgat rode down to Mexico with his Vagos confederates. (*Id*. 5:10–16). The confidential informant went along, purchased drugs for the Vagos group, and observed several Vagos brothers using the drugs. (*Id*.) But, Halgat abstained. (*Id*.)

On July 5, 2012, Brancato solicited Halgat to sell Brancato a semi-automatic gun. (*Id*. at 5:17–24). In response, Halgat procured a lawfully purchased and legally possessed firearm. (*Id*.) Later, Brancato solicited Halgat for a second gun. Again, Halgat procured a lawfully purchased and legally possessed firearm. (*Id*.) Then, Brancato solicited Halgat to sell Brancato a fully-automatic gun. (*Id*.) In response, Halgat told Brancato that he did not possess fully automatic firearms and proceeded to explain

---

[2] Motorcycle patches are the primary means of displaying membership in and/or allegiance to a motorcycle club. *See, e.g.*, Dulaney, *A Brief History of Outlaw Motorcycle Clubs*, INT'L J. OF MOTORCYCLE STUDIES (Nov. 2005).

to Brancato the law governing fully automatic guns. (*Id*. at 18:1–4).

On August 10, 2012, Brancato approached Halgat with a comparable request, which yielded comparable results. Brancato solicited Halgat to sell Brancato a quarter-pound of cocaine. Halgat responded: "Honest, that will be a problem." (*Id*. at 6:8). And, Brancato replied: "Yeah, but, you know what, homey, sometimes you have to take a risk, you know. Times are hard right now, homey. [. . .] [F]or me, right now, it's worth the risk." (*Id*. at 6:8–12). Later that evening, Brancato asked Halgat to put Brancato in touch with Halgat's co-defendnat, Udell Wickham, so that Brancato could purchase cocaine from Wickham. (*Id*. at 6:13–14). Halgat responded by saying that all he will contribute is an introduction to Wickham. (*Id*.)

Nonetheless, Halgat eventually participated in four illegal drug-related transactions. (*See* Indictment (#1) at 2–3). On September 19, 2012, Halgat met Brancato at his residence, discussed buying cocaine from Wickham, and arranged for Brancato to purchase one ounce of cocaine from Wickham for $800.00. (Gov't's Opp'n (#45) at 2–3). Later that day, Halgat and Brancato drove to Hooters, met Wickham on the restaurant's patio, and went inside where Brancato paid Wickham $700.00 for cocaine. (*Id*. at 4). After dinner, Halgat gave Brancato a purple Crown Royal bag. (*Id*.) Brancato and Halgat returned to Brancato's home; Brancato opened the bag and discovered approximately 29 grams of cocaine. (*Id*.) Halgat said that he would tell Wickham the cocaine weighed exactly one ounce before departing. (*Id*.)

On October 11, 2012, Brancato bought a second ounce of cocaine from Halgat and Wickham at Michael's Pub. (*Id*.) The only difference between this transaction and the previous purchase was that Wickham handed the cocaine directly to Brancato. (*Id*. at 5). The next day, Brancato, Halgat, and Wickham returned to Michael's Pub for a third purchase. (*Id*.) On October 26, 2012, a fourth transaction occurred. (*Id*.) Lab results revealed that the substance purchased at each transaction was, in fact,

3

Case 2:13-cr-00241-APG-VCF   Document 70   Filed 04/22/14   Page 4 of 13

cocaine, which weighed 27.95g, 27.91g, 27.88g, and 27.60g. (*Id*.)

Now, Halgat moves to compel the Government to disclose (1) the confidential informant's case file, (2) Brancato's cell phone for a forensic examination, and (3) two ATF's related agents' cell phones, call logs, and cell phone bills. (*See* Def.'s Mots. to Compel #38, #39); (*see also* Mins. Proceedings #65) (oral motion for Agent Ware and Agent Arboreen's cell phones and cell-phone records). Halgat argues, *inter alia*, that the information should be compelled because it contains potentially exculpatory evidence in support of Halgat's entrapment defense. (*Id*.)

**DISCUSSION**

Halgat's motions raise three questions: whether the Government should produce (1) information regarding its confidential informant under *Maryland & Roviaro*; (2) Agent Brancato's cell phone for forensic analysis under Rule 16; and (3) Agent Ware and Agent Arboreen's cell phones and cell-phone records under *Brady v. Maryland*. Each question is addressed in turn.

**I.**     **Whether the Government must Produce Information regarding its Confidential Informant**

The first question Halgat's motions presents is whether the Government is required to produce potentially material evidence regarding its confidential informant. Before considering whether Halgat is entitled to this information, the court begins its analysis by reviewing the Supreme Court's decisions in *Brady v. Maryland* and *Roviaro v. United States*, which govern material evidence and confidential informants.

**A.**     ***Discovery Requests under* Brady v. Maryland & Roviaro v. United States**

In general, there is no constitutional right to discovery in criminal matters. *Weatherford v. Burse*, 429 U.S. 545, 559 (1977). However, Federal Rule of Criminal Procedure 16, the Jencks Act, 18 U.S.C. § 3500 (1994), and the Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) permit discovery in limited circumstances.

4

In *Brady*, the Court determined that the due process clause requires the Government to disclose exculpatory evidence. *Brady*, 373 U.S. at 87. This includes material that is "favorable to the accused," casts a shadow of a doubt on the credibility of the Government witnesses, or is "material to the defendant's guilt or innocence." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995); *Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *Smith v. Cain*, 132 S. Ct. 627, — U.S. — (2012); *see also* BLACK'S LAW DICTIONARY (9th ed. 2009), material evidence ("Evidence having some logical connection with the facts of consequence or the issues.").

The Ninth Circuit has held that the Government must disclose *Brady* material before trial when the information would be of value to the accused. *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1988). No court order is required. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985)).[3] If the Government doubts the exculpatory value of information, disclosure is required. *See Whitley*, 514 U.S. at 439 (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure")). The Government's failure to timely disclose *Brady* material may require a new trial. *United States v. Lewis*, 368 F.3d 1102, 1107 (9th Cir. 2004) (citing *United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978)).

However, a criminal defendant's right to receive *Brady* material is not absolute. The Government holds a limited privilege to conceal the identity of its informants. *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *United States v. Sai Keung Wong*, 886 F.2d 252, 255 (9th Cir. 1989) (citation omitted). This

---

[3] Additionally, Nevada Rule of Professional Conduct 3.8(d), which has been adopted in the District of Nevada, states that "[t]he prosecutor in a criminal case shall [m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." As stated in *United States v. Acosta*, "[w]hether evidence is 'useful,' 'favorable,' or 'tends to negate the guilt or mitigate the offense' are semantic distinctions without a difference in the pretrial context." *Acosta*, 357 F. Supp. 2d 1228, 1232 (D. Nev. 2005).

privilege protects the public's interest in effective law enforcement. *Roviaro*, 353 U.S. at 59 (citing *Scher v. United States*, 305 U.S. 251, 254 (1938)).

Under *Roviaro*, the Government's privilege is inapplicable where: (1) disclosing a communication will not tend to reveal the informant's identity; (2) the informant's identity has already been disclosed; or (3) disclosure of the informant's identity, or the contents of the communication, "is relevant and helpful to the defense, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60–61.

A criminal defendant's "mere suspicion" that the informant's evidence is "relevant and helpful" under *Brady* will not defeat the Government's privilege under *Roviaro*. *See United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2001). However, if the privilege applies, and if the defendant makes a "'minimal threshold showing' that disclosure would be relevant to at least one defense," then the district court must hold an *in camera* hearing. *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000) (citing *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993)). *In camera* hearings are advantageous because they pose "little risk of disclosing the identity of the informant" and may provide many of the same benefits as disclosure itself, especially when defense counsel may participate under an order not to reveal any information disclosed during the hearing. *Id.* (citation omitted).

There is "no fixed rule" governing the court's decision to order the disclosure of *Roviaro* information. *Roviaro*, 353 U.S. at 62. The court must balance the extent to which disclosure would be relevant and helpful against the Government's interest in protecting its informants. *Id*. The Ninth Circuit has articulated a three prong test to assist the court with *Roviaro* balancing: "(1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure."

*United States v. Gonzalo Beltran*, 915 F.2d 487, 489 (9th Cir. 1990) (citing *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir.1985)).

### B. *Application of* Brady v. Maryland & Roviaro v. United States

Halgat argues that the confidential informant's case file should be produced because it is unprotected by *Roviaro* and material to his entrapment defense. (Def.'s Mot. to Compel (#38) at 1–2); (Mins. Proceedings #65).[4] The Government does not dispute that the confidential informants case file is material under *Brady*. (*See generally* Gov't's Opp'n (#44) at 6–7); (Mins. Proceedings #65). In response to Halgat's motion, the Government only argues that the confidential informant's case file is protected under *Roviaro*. The court disagrees.

The court finds that the *Roviaro* privilege is inapplicable to Halgat's discovery request for two reasons. First, *Roviaro* is inapplicable. Like all privileges, the *Roviaro* privilege is limited by its scope: "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Roviaro*, 353 U.S. at 59. Here, Halgat argues that he "knows the identity of the informant in this case." (Def.'s Mot. to Compel (#38) at 3: 21, n. 1). The Government's opposition failed to respond to Halgat's assertion; and during the court's April 8, 2014, hearing, it did not argue that Halgat does not know the informant's identity. (*See* Mins. Proceedings #65). Accordingly, there is no dispute that Halgat knows the informant's identity. As stated during the hearing, both Halgat and the informant were fully "patched" members of Vagos and both traveled together with a small group of Vagos "brothers" to Mexico. (*See* Mins. Proceedings #65).

---

[4] Halgat's motion requests eleven specific categories of information: the informant's (1) name and known aliases, (2) age, (3) social security number, (4) criminal record or history of criminal investigations, (5) bank records, (6) current location, (7) participation with the Government in similar operations, and (8) all communications with the Government regarding the investigation into Halgat. Additionally, Halgat seeks information regarding (9) date the confidential informant agreed to work with the Government, (10) whether or not the informant was incarcerated at the time, and (11) the terms of the agreement. However, during the court's hearing, Halgat restyled his request as simply seeking the confidential informant's case file.

7

Rather than arguing that the informant's identity is unknown, which is what *Roviaro* requires, the Government asserted that the Ninth Circuit's test in *United States v. Gonzalo Beltran*, 915 F.2d 487, 489 (9th Cir. 1990) (per curiam) militates in favor of nondisclosure. (*See* Mins. Proceedings #65); (*see also* Gov't's Opp'n (#44) at 6–11). This argument is misguided. Where—as here—the defendant knows the informant's identity, *Roviaro* is inapplicable. *Roviaro*, 353 U.S. at 60 (citations omitted). Accordingly, the facts in this case do not trigger *Beltran*. *Beltran* only applies where the informant's identity is unknown and the defendant nonetheless moves to compel the Government to disclose the informant's identity. *See Beltran*, 915 F.2d at 488 ("Prior to trial, Beltran had moved unsuccessfully for disclosure of Milan's true identity. During trial, Beltran moved for an order that would have required the government to accept a subpoena for Milan. The district court denied both motions and Beltran appeals. [. . .] We affirm.").

Second, even if *Roviaro* applied, which it does not, most of the information Halgat seeks is not protected by *Roviaro*. Halgat seeks the confidential informant's case file. As stated above, this includes the informants' criminal history records, participation with the Government in similar operations, the date the informant agreed to work with the ATF, whether the informant was incarcerated at that time, and the terms of the agreement. (Def.'s Mot. to Compel (#38) at 1–2).  However, *Roviaro* only applies to the informant's "identity." *See Roviaro*, 353 U.S. at 59; *Sai Keung Wong*, 886 F.2d at 255.

Therefore, the court grants Halgat's motion to compel (#38) because the Government failed to demonstrate that the confidential informant's case file is not material under *Brady* and is protected under *Roviaro*.

**II.     Whether the Government must Produce the Undercover Agent's Cell Phone**

Halgat's motions raise a second question: whether the Government should produce the undercover agent's cell phone for a forensic examination to recover lost data under Rule 16. (Def.'s

Mot. to Compel (#39) at 1). Before addressing this question, the court begins its analysis by reviewing the governing law.

### A.   *Discovery Requests under Rule 16*

In addition to *Brady* material, criminal defendants are also entitled to discovery under Federal Rule of Criminal Procedure 16. Rule 16(a)(1)(B) requires the Government to disclose "any relevant written or recorded statement by the defendant if the statement is within the Government's control and the Government's attorney "could know" that the statement exists. Additionally, Rule 16(a)(1)(E) requires the Government to permit defendants "to inspect" documents and objects within the Government's control.

Rule 16 grants defendants "a broad right of discovery," which includes both exculpatory and inculpatory evidence that is relevant to the defense. *United States v. Muniz–Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013); *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013). Unlike *Brady*, the "defendant must make a threshold showing of materiality" to compel discovery under Rule 16. *Muniz–Jaquez*, 718 F.3d at 1183. This requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense. *Id*. General descriptions and conclusory allegations are insufficient to compel discovery under Rule 16. *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)).

### B.   *Application of Rule 16 to Halgat's Discovery Request*

The Government argues that Halgat's discovery request should be denied for two reasons: (1) Halgat "fails to assert a basis for requiring defendant's own independent forensic examination" of the phone and (2) Halgat failed to satisfy his threshold burden of showing that the data is "material." (Gov't's Opp'n (#45) at 7:7–8, 9:23–24). The court disagrees.

The Government's first argument fails as a matter of law. The Government contends that Rule 16(a)(1)(E) does not permit Halgat to forensically examine the undercover agent's cell phone because the word "inspect" in Rule 16 excludes forensic examination. (Mins. Proceedings #65); (Gov't's Opp'n (#45) at 8:13–23). The Government did not cite any provision of Rule 16's Advisory Committee Notes or prior decision in support of its position. (*Id.*) "To inspect" means, *inter alia*, "to examine officially." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 604 (10th ed. 2001); *see also* BLACK'S LAW DICTIONARY (9th ed. 2009), inspection ("A careful examination of . . . items produced in response to a discovery request (to determine their relevance to a lawsuit)."). No logical leap is required to conclude that "inspection" may include a forensic examination. Accordingly, courts have permitted defendants to forensically examine tangible objects under Rule 16. 2 C. A. WRIGHT & P. J. HENNING, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 254 at 108 (3d ed. 2009) (citing *United States v. Noel*, 708 F. Supp. 177 (W.D. Tenn. 1989) (permitting the defendant to independently test a sample of an alleged controlled substance)).[5]

The Government's second argument—(*viz.*, that Halgat failed to demonstrate materiality)—is equally unpersuasive. Contrary to the Government's assertion, Halgat satisfied his threshold showing of materiality by demonstrating that the cell phone contains deleted text messages between Government agents that discuss Halgat and Operation Pure Luck. (*See generally* Def.'s Mot. (#39) at 7–12); (Def.'s Reply (#54) at 2–3) (stating that Government records demonstrate that 26% of the cell phone's information was deleted). Additionally, the Government's argument is also unpersuasive because the Government previously agreed to permit Halgat to forensically examine the phone provided that the parties entered into a protective order that would prevent irrelevant information from being disclosed.

---

[5] The court is also unpersuaded by the Government's argument because the Government admitted during oral argument that it has previously produced cell phones for forensic analysis, presumable pursuant to Rule 16. (Mins. Proceedings (#65) at 48:00).

10

(*See* Letter from Ms. Silva (#39-5) Exhibit 5 at 1) ("We can make the phone available for forensic evaluation"). The Government withdrew this offer because it "will not be using the phone, or its text messages during our case-in-chief." (Email form Ms. Silva (#39-9) Exhibit 9 at 1). This argument fails as a matter of law. Halgat is entitled to discover this information under Rule 16, regardless of whether the Government intends to use the information in its case-in-chief. *See Muniz–Jaquez*, 718 F.3d at 1183 (stating that Rule 16 grants defendants "a broad right of discovery").

### III. Whether the Government must Produce Agent Ware & Agent Arboreen's Cell Phones

Halgat raised a third issue during the court's April 8, 2014, hearing: whether the Government must produce Agent Ware and Agent Arboreen's cell phones and cell-phone records. (Mins. Proceedings (#65). Halgat orally moved to compel the cell phones and cell-phone records because they most likely contain potentially exculpatory material.

Halgat argues that Agents Ware and Arboreen's cell phones and cell-phone records contain *Brady* material because (1) completed discovery demonstrates that the agents used their cell phones as debriefing devices to record conversations with the confidential informant and (2) the discovery produced regarding the confidential informant's cell-phone records (i.e., the Cellebrite Report) does not pre-date April 2013. (*See* Mins. Proceedings (#65) at 38:00). The transactions charged in the indictment occurred before April 2013. Although the Government orally opposed Halgat's motion, the Government also conceded that (1) the Government does not deny that phones many have been used as recording devices (*see id*. at 50:20) and (2) there are doubts as to the exculpatory value of phone logs and the other information Halgat requests (*id*. at 50:15). The Government's opposition is unpersuasive.

As discussed above, the Government must disclose exculpatory evidence. *Brady*, 373 U.S. at 87. It is the Government's duty to determine whether evidence is exculpatory and, if so, disclose it. *See Whitley*, 514 U.S. at 439. No court order is required. *Aichele*, 941 F.2d at 764. However, in certain

11

cases—as here—it is not immediately apparent whether a piece of evidence is exculpatory. *Whitley*, 514 U.S. at 439. This results from the fact that "the character of a piece of evidence as favorable will often turn on the context of the existing or potential evidentiary record." *Id*. Therefore, questions and doubts arise. (*See* Mins. Proceedings (#65) at 50:20) ("Call logs. How are call logs exculpatory?"). In these cases, the prosecutor's duty to see that "justice shall be done" militates in favor of disclosure. *Id*. (citing *Berger v. United States*, 295 U.S. 78, 88 (1935) (stating that prosecutors are "the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done."); *Agurs*, 427 U.S. at 108 ("[B]ecause the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure").

Therefore, the court grants Halgat's oral motion to compel the Government to disclose Agent Ware and Agent Arboreen's cell phones and cell-phone records. The Government conceded that the agents used their cell phones as recording devices. (*See* Mins Proceedings (#65) at 49:00 ("[The cell phones] may or may not have been used [as record devices]. And, we're not going to deny that.") Additionally, the Government conceded that it cannot determine whether the requested information is exculpatory. (*Id.* at 50:20) ("Call logs. How are call logs exculpatory?"). These concessions require disclosure. *See Agurs*, 427 U.S. at 108; *Whitley*, 514 U.S. at 439.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Jeremy Halgat's motion to compel (#38) is GRANTED.

IT IS FURTHER ORDERED that Jeremy Halgat's motion to compel (#39) is GRANTED.

/// /// ///

/// /// ///

/// /// ///

IT IS FURTHER ORDERED that Jeremy Halgat's oral motion to compel (#65) is GRANTED.

IT IS FURTHER ORDERED that the Government must satisfy Jeremy Halgat's discovery requests within FOURTEEN DAYS of this order.

IT IS SO ORDERED.

DATED this 22nd day of April, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

13